UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re:

JOHN J. MENDOLIA and NICOLINA M.          Chapter 7
MENDOLIA,                                  Case No.: 12-60219

                      Debtors.

---

In Re:

JAMES C. COLLINS, in his official capacity as      Adv. Pro. No.: 14-80002
Trustee of the Bankruptcy Estate of JOHN J.
MENDOLIA and NICOLINA M. MENDOLIA,

                      Plaintiff,

vs.

J&N RESTAURANT ASSOCIATES, INC.,
ENDVEST, INC., UPFRONT, INC., and
WILLOW RUN FOODS, INC.,

                      Defendants.

---

APPEARANCES:

| | |
|---|---|
| THE CROSSMORE LAW OFFICE | *Edward Y. Crossmore, Esq.* |
| *Special Counsel to the Plaintiff* | |
| 115 West Green Street | |
| Ithaca, New York 14850 | |
| | |
| MELVIN & MELVIN, PLLC | *Louis Levine, Esq.* |
| *Attorneys for Defendants J&N Restaurant Associates,* | |
| *Inc., Endvest, Inc., and Upfront, Inc.* | |
| 217 South Salina Street | |
| Syracuse, New York 13202 | |

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      The Court has before it a Motion for Summary Judgment filed by Defendants J&N

Restaurant Associates, Inc., Endvest, Inc., and Upfront, Inc. (the "Franchise Defendants"). (The

"Motion," ECF Adv. No. 40.)[1]  The Franchise Defendants seek dismissal of the Adversary Complaint to Avoid and Recover Transfers (the "Complaint") filed by Plaintiff James C. Collins ("Plaintiff"), by which Plaintiff seeks to recover for the chapter 7 bankruptcy estate of John and Nicolina Mendolia payments in the total amount of $51,900.00 made by the Mendolias and collectively received by the Franchise Defendants as alleged fraudulent conveyances under 11 U.S.C. § 548 immediately prior to the Franchise Defendants' own voluntary entry into chapter 11 bankruptcy.[2]  (ECF Adv. No. 1; Mot. Ex. H.)  While the Complaint includes additional causes of action premised upon other theories of recovery, including §§ 547, 550, and 551, Plaintiff withdrew the § 547 cause of action during his defense of the Franchise Defendants' prior Motion to Dismiss decided in this adversary proceeding.  The sole question presented by the present Motion is whether Plaintiff's remaining avoidance claims arising under chapter 5 of the Bankruptcy Code ("Chapter 5 Claims") were discharged by confirmation of the Franchise Defendants' plan of reorganization on March 11, 2013, more than one year prior to Plaintiff's commencement of the instant adversary proceeding.  (*See* Mot. Exs. C and L.)[3]  This is a matter of first impression for the Court and one in which the Court finds very little guidance in existing precedent or the universe of available secondary resources.  For the reasons that follow, however, the Court decides the Motion in favor of the Franchise Defendants.

---

[1] Documents filed in the adversary proceeding will be referred to herein as "ECF Adv. No. __." Documents filed in the main bankruptcy case will be referred to herein as "ECF No. __."

[2] All further section references herein relate to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101–1532 (2012).

[3] The electronic docket of the Franchise Defendants' jointly administered chapter 11 cases can be found on the Court's CM/ECF Web site at designated lead Case Number 12-60069. Documents filed in the Franchise Defendants' lead case that are not otherwise made a part of the record by virtue of the Motion will be referred to herein as "ECF Lead No. __."

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and 157(b)(2)(E) and (H). The Court now decides the Motion in accordance with Federal Rule of Civil Procedure 56, as made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Bankruptcy Procedure 7052, and Local Bankruptcy Rule 7056-1.

## FACTS

The relevant facts are taken mainly from the Franchise Defendants' Statement of Undisputed Facts ("SOF"), which are largely uncontested by Plaintiff per his Statement in Response. (ECF Adv. Nos. 45 and 48, respectively.)

In 2012, John and Nicolina Mendolia were the sole officers and shareholders of the Franchise Defendants, each of which is organized as a business corporation in the State of New York to operate an Arby's restaurant as a licensed franchisee of Arby's Restaurant Group, Inc. Prior to January 9, 2012, John and Nicolina Mendolia owned a parcel of real property located at West Shore Road, New Berlin, New York (the "Lake House"), which they sold on that date. (Corp. Defs.' SOF ¶¶ 1–2.) The net proceeds from the sale of the Lake House exceeded $51,900.00. (Corp. Defs.' SOF ¶ 3.) Between the 9th and the 11th of January 2012, the Mendolias deposited an aggregate sum of $51,900.00 from the aforesaid proceeds into the Franchise Defendants' general operating accounts. (Corp. Defs.' SOF ¶¶ 4–5.) On January 19, 2012, the Franchise Defendants filed their respective petitions for chapter 11 relief. (Corp. Defs.' SOF ¶ 6; Motion Ex. C.)

On February 16, 2012, the Mendolias filed their joint petition for chapter 7 relief (the "Petition"). (Corp. Defs.' SOF ¶ 7; Mot. Ex. D.) On or about February 17, 2012, Plaintiff was

appointed by the United States Trustee pursuant to § 701 as the trustee of the Mendolias' chapter 7 bankruptcy estate. On their Statement of Financial Affairs filed with the Petition, the Mendolias included a description of the Lake House and a breakdown of the various deposits of sale proceeds into the Franchise Defendants' operating accounts. (Corp. Defs.' SOF ¶ 8; Mot. Ex. E.)

On May 17, 2012, Plaintiff filed a motion to convert the Franchise Defendants' bankruptcy cases from cases under chapter 11 of the Bankruptcy Code to cases under chapter 7 of the Bankruptcy Code pursuant to § 1112(b). (Corp. Defs.' SOF ¶ 9; Mot. Ex. F.) Plaintiff's substantive basis for conversion was, in part, the Mendolias alleged funding of the Franchise Defendants' chapter 11 cases via the proceeds from the sale of Lake House. The Court entered an order in the Franchise Defendants' lead case denying Plaintiff's conversion motion on July 12, 2012. (ECF Lead No. 105.)

On August 23, 2012, Plaintiff commenced an adversary proceeding against the Mendolias by filing an adversary complaint seeking to deny their chapter 7 discharge pursuant to various subsections of § 727, which was also premised on the same facts and transactions at issue here. (Corp. Defs.' SOF ¶ 11; Mot. Ex. H.)[4] Plaintiff later filed a motion seeking to withdraw the adversary complaint and discontinue the adversary proceeding without consideration and with prejudice, which the Court granted. (ECF Mendolia Adv. Nos. 9 and 16, respectively.)

On January 29, 2013, the Franchise Defendants filed their First Amended Joint Plan of Reorganization (the "Plan") and their First Amended Joint Disclosure Statement (the "Disclosure Statement"). (Corp. Defs.' SOF ¶ 13; Mot. Ex. I.) Copies of both documents were served upon

---

[4] The electronic docket of Plaintiff's adversary proceeding against the Mendolias can be found on the Court's CM/ECF Web site at Adversary Proceeding Number 12-80019. Documents filed in that adversary proceeding that are not otherwise made a part of the record by virtue of the Motion will be referred to herein as "ECF Mendolia Adv. No. __."

Plaintiff and all creditors. (Corp. Defs.' SOF ¶ 15; Mot. Ex. J.) Article 2 of the Plan included a definitional section that provided for certain terms to have a specific meaning therein, including:

> 'Administrative Expense Claim,' shall mean a Claim which accrued on or after the Petition Date which may be allowed pursuant to Section 503 of the Code;
>
> 'Allowed Claim,' shall mean . . . An Administrative Expense Claim, the amount of which has been allowed or fixed by a Final Order of the Court; [and]
>
> . . . .
>
> 'Creditor' shall mean any person or entity which holds or owns a Claim or an Administrative Expense Claim.

(Mot. Ex. L.) The "Petition Date" was subsequently defined as January 19, 2012.

The Disclosure Statement listed as unclassified claims eight administrative expense claims known to the Franchise Defendants when it was filed and it included terms for payment of each claim, but it did not include or reference Plaintiff's Chapter 5 Claims or provide for payment of the same. The Disclosure Statement indicated that claimants holding administrative expense and other unclassified claims would not be entitled to vote on the Plan, but advised such claimants that they were nevertheless permitted to object to confirmation of the Plan. The Disclosure Statement referenced a general proof of claim bar date but did not reference a separate bar date for administrative expense claims because the latter was not requested by the Franchise Defendants or required to be set by the Court in their cases.

As to the discharge of debt, the Disclosure Statement provided as follows:

> On the effective date of the Plan, the Debtors shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that Debtors shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy

> Procedure, or (iii) of a kind specified in §1141(d)(6)(B). After the effective date of the Plan, any claims against the Debtors will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

(Mot. Ex. I.) Similarly, Article 8(c) of the Plan, titled "Discharge of All Claims," provided as follows:

> Except as otherwise provided in the Plan, the rights granted in the Plan shall be in exchange for and in consideration of, and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever (including, without limitation, any interest accrued thereon, from and after the Petition Date) and of all rights and interests of Creditors against the Debtor or any of its assets or property.

(Mot. Ex. L.) Article 8(b) of the Plan, titled "Revesting of Property," also provided for the revesting of property of the estates in the hands of the Franchise Defendants "free and clear of all Claims and of the rights and interests of all Creditors." (Mot. Ex. L.) Article 8(d) of the Plan, titled "Merger," provided for the merger of pre-confirmation claims and obligations such that the Plan and the order confirming the plan were to "contain the final, complete and exclusive statement of the obligations and duties of the Debtors to the Creditors, and the enforceability of the Claims and Administrative Expense Claims, and the rights of Creditors to or against the Debtors and/or any of their businesses, properties or other assets." (Mot. Ex. L.)

On March 11, 2013, the Court issued an order approving the Disclosure Statement and Confirming the Plan (the "Confirmation Order"). (Corp. Defs.' SOF ¶ 17; Mot. Ex. L.) The Confirmation Order modified the Plan in part to acknowledge that the Mendolias were to retain their stock in each of the Franchise Defendants by purchasing the same from Plaintiff through their chapter 7 case for the price of $833.33 per share, or a total of $5,000.00. On May 1, 2013, the Court entered the final decree in the Franchise Defendants' lead case, thereby closing each of the Franchise Defendants' cases. (Corp. Defs.' SOF ¶ 20.) Plaintiff did not file a proof of claim, a

motion for allowance of an administrative expense claim, or an objection to confirmation of the Plan in the Franchise Defendants' cases.

On May 8, 2013, Plaintiff filed a motion in the Mendolias' chapter 7 case seeking permission to effectuate the sale of stock to the Mendolias. (Corp. Defs.' SOF ¶ 21.) The Court granted Plaintiff's sale motion by order dated July 1, 2013. (Corp. Defs.' SOF ¶ 22; Mot. Ex. M.) On or about November 1, 2013, Plaintiff executed and delivered his Bill of Sale conveying to the Mendolias pursuant to the Plan the common stock of all Franchise Defendants. (Corp. Defs.' SOF ¶ 24; Mot. Ex. N.)

On February 14, 2014, Plaintiff filed the Complaint that is now the subject of the Franchise Defendants' pending Motion. (Corp. Defs.' SOF ¶ 26.) The Franchise Defendants filed their Answer on July 15, 2014, alleging therein certain affirmative defenses discussed more fully below. (Corp. Defs.' SOF ¶ 27.) The day after filing their Answer, the Franchise Defendants filed the Motion and accompanying Memorandum of Law. (ECF Adv. No. 43.) On July 30, 2014, Plaintiff filed a Memorandum of Law in Opposition to the Motion. (ECF Adv. No. 50.) The Court heard oral argument on the Motion on August 7, 2014. At the close of the hearing on that date, the Court provided the parties with a final opportunity to supplement the record. On August 8, 2014, the Franchise Defendants filed a letter further clarifying their position with respect to one of their affirmative defenses. (ECF Adv. No. 52.) Plaintiff did not file supplemental papers. Following oral argument and final briefing, the Motion is now ripe for determination.

## ARGUMENTS

The Franchise Defendants raise three affirmative defenses in their Answer which they now contend each independently supports the Motion. As a first affirmative defense, the Franchise Defendants assert that Plaintiff's Chapter 5 Claims are barred pursuant to the provisions of the

confirmed Plan and/or the provisions of § 1141(a).  With respect to the Plan itself, the Franchise Defendants point to Article 2 and the Revesting, Discharge, and Merger provisions found within Article 8 of the Plan.  They argue that the Plan was structured to capture within the terms "Administrative Expense Claim" and "Creditor" any entity that held a post-petition administrative claim, whether or not such claim had been formally approved by the Court, and to discharge any post-petition administrative claim not previously approved by the Court or provided for by the Plan.  The Franchise Defendants posit that pursuant to the plain language of the Plan, Plaintiff's Chapter 5 Claims must be deemed "Administrative Expense Claims" and Plaintiff must be deemed a "Creditor."  Because Plaintiff failed to file a proof of claim or to seek allowance or approval of the post-petition, pre-confirmation Chapter 5 Claims from the Court pursuant to § 503, he failed to object to confirmation, and the Plan made no provision for their payment, the Franchise Defendants assert that Plaintiff is now forever barred by Article 8 of the Plan from enforcing the Chapter 5 Claims against any assets of the reorganized Corporate Debtors.

The Franchise Defendants separately argue that the Plan is binding upon Plaintiff pursuant to § 1141(a) because Plaintiff became the sole equity security holder of the Franchise Defendants upon the Mendolias' chapter 7 filing and because he received property under the Plan, i.e., the payment of $5,000.00 for the stock transaction.  The Franchise Defendants aver that the procedural history of their cases, as well as the Mendolias' chapter 7 case and the related § 727 adversary proceeding, demonstrate that Plaintiff had actual notice and ample opportunity to preserve the Chapter 5 Claims, yet he failed to present or seek enforcement of the Chapter 5 Claims until nearly one year after confirmation of the Plan.  Thus, the Franchise Defendants argue that Plaintiff cannot do so now in light of § 1141(a).

As a second affirmative defense, the Franchise Defendants assert that Plaintiff's Chapter 5 Claims are barred by operation of law pursuant to § 1141(d). The Franchise Defendants contend that § 1141(d)(1)(A) operates to discharge all pre-confirmation debts unless a plan of reorganization expressly limits the statute's effect, which they state the Plan did not do in this case. The Franchise Defendants further argue that § 1141(d)(1)(A) operates independently from § 1141(a) and a plan of reorganization because the statutory language implements a discharge that is dependent solely on the entry of a confirmation order. Because Plaintiff's Chapter 5 Claims came into existence post-petition but pre-confirmation and the Plan was entirely silent with respect to the same, the Franchise Defendants argue that the Chapter 5 Claims were discharged by operation of law upon the Court's entry of the Confirmation Order.

As a third affirmative defense, the Franchise Defendants assert that the Complaint and Plaintiff's Chapter 5 Claims are barred by the doctrine of res judicata. The Franchise Defendants argue that the Confirmation Order is preclusive as to all issues that were or could have been decided during the confirmation process, including Plaintiff's enforcement of or right to recover upon the Chapter 5 Claims through the Plan. The Franchise Defendants suggest that Plaintiff stands on equal footing with all other creditors in their chapter 11 cases notwithstanding his status as trustee of the Mendolias' chapter 7 bankruptcy estate and, as such, having participated in the Plan's formulation and the confirmation process, Plaintiff was able to but did not timely assert or preserve the Chapter 5 Claims.

In Plaintiff's Memorandum of Law in Opposition to the Motion, Plaintiff concedes that the Chapter 5 Claims are administrative expense claims, but he argues in the first instance that because the Franchise Defendants failed to set a bar date in the Plan for such claims and the Plan provisions are not binding upon Plaintiff as trustee of the Mendolias' bankruptcy estate, it is the applicable

two-year statute of limitations set by § 546(a) that controls whether the Complaint survives.[5] In light of the applicable statute of limitations, Plaintiff argues that the Complaint is timely rather than barred.

As to whether Plaintiff is bound by the Plan itself, Plaintiff states that as the holder of statutorily created Chapter 5 Claims and powers exercisable for the benefit of the Mendolias' creditors, which arose post-petition, he is not a "creditor" of the Franchise Defendants as that term is defined by the Bankruptcy Code under § 101(10)(A). Without addressing the specific Plan provisions that expand the Bankruptcy Code's definition of the term "creditor," Plaintiff concludes that he is not bound by the terms of the Plan. Moreover, even if he were bound by the Plan, Plaintiff contends that the Plan, rather than operating to bar administrative expense claims at confirmation, required payment of the same pursuant to § 1129(a)(9)(A).

Plaintiff similarly argues that he is not bound under § 1141(a) because he does not fall within the universe of parties bound by this provision, including, but not limited to, any entity that acquires property under the plan, any pre-petition creditor, or an equity security holder. *See* 11 U.S.C. § 1141(a). Although Plaintiff acknowledges that the Plan contemplated the Mendolias purchase of the corporate stock for the sum of $5,000.00, which they in fact did as approved by the Court, Plaintiff contends that the Mendolias exercised this option using their own funds. Plaintiff therefore disputes the Franchise Defendants' contention that he received property under the Plan. Plaintiff also denies that he may be bound as an equity security holder because he acted as successor in interest to the Mendolias' pre-petition property interest in the Franchise Defendants' stock. Plaintiff contends that he is pursuing the statutory Chapter 5 Claims in his

---

[5] Because the classification of Plaintiff's Chapter 5 Claims as administrative expense claims is uncontested, the Court will assume for purposes of this Motion that an avoidance claim against a party that arose while that party was in bankruptcy is an administrative claim in that party's bankruptcy case.

capacity as the holder of avoidance powers exercisable in favor of the Mendolias' creditors rather than in his capacity as successor in interest to the Mendolias, and that he accordingly falls outside the scope of § 1141(a). Hence, it appears Plaintiff asserts that he does not have a relationship with the Corporate Debtors that may be modified by the Plan.

As to whether Plaintiff's Chapter 5 Claims were discharged by operation of § 1141(d), Plaintiff contends that the Franchise Defendants' argument is flawed and overly broad for numerous reasons. First, Plaintiff states that § 1141(d) is limited by the language of the Plan and to the extent the Confirmation Order provided that all requirements set forth in § 1129 were satisfied, the Plan required all administrative claims to be paid on the effective date whether or not a proof of claim had been filed, including the Chapter 5 Claims. Second, Plaintiff contends that if a party is not bound by § 1141(a), then its claim cannot be discharged by § 1141(d). Third, Plaintiff argues that § 1141(d) discharges post-petition claims against the debtor but not against the debtor's estate and the latter must be paid as a condition to confirmation.

In support of his position, Plaintiff refers the Court to the decision of *Wallach v. Frink Am., Inc. (In re Nuttall Equip. Co.)*, 188 B.R. 732 (Bankr. W.D.N.Y. 1995), citing the same for the proposition that despite § 1141(d), allowed administrative claims and pre-confirmation administrative expense claims arising out of the ordinary course of business for which no request for payment is ever made pre-confirmation are excepted from discharge, *id.* at 737–38. Plaintiff also cites *Browning v. MCI, Inc. (In re WorldCom, Inc.)*, 546 F.2d 211 (2d Cir. 2008), as further support for his argument that because the Franchise Defendants' estates were in existence at the time Plaintiff's Chapter 5 Claims arose, those claims were subject to administrative expense treatment in accordance with the Bankruptcy Code.

As to whether Plaintiff's Chapter 5 Claims are barred by res judicata, Plaintiff argues that they are not because he did not participate in the Franchise Defendants' Plan confirmation process and he therefore did not become "a party" contemplated by res judicata. While the doctrine of res judicata operates to expand the parties bound by a plan under § 1141(a), Plaintiff argues that it does not apply here because participation for purposes of res judicata requires something more than passive receipt of effective notice, which Plaintiff contends was the extent of his involvement in the Franchise Defendants' cases. Although the Franchise Defendants assert that Plaintiff was more fully involved in the Plan's formulation, Plaintiff argues that this is a question of fact that precludes the Court from granting the Motion on this ground. Similarly, Plaintiff asserts that he was not in privity with any party to the Franchise Defendant's Plan confirmation process because he is the only party with the incentive and authority to have pursued or raised an objection to confirmation based upon the Chapter 5 Claims.

## DISCUSSION

The facts underpinning the Motion, the parties' legal theories advanced with respect to the Motion, and the overarching question before the Court as to whether Plaintiff's Complaint and adversary proceeding survive in light of the Franchise Defendants' Confirmation Order are unique. The standard for granting summary judgment, however, is well established. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Because the Franchise Defendants are moving for summary judgment on the basis of certain of their affirmative defenses that they have the burden of raising in their respective answers and establishing at trial, they carry the burden to establish those defenses conclusively on a motion for summary judgment. *See, e.g., Bailey v. Pataki*, 708 F.3d 391, 404 (2d Cir. 2013) (citing *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)). The Franchise Defendants must therefore show that no genuine issue of fact exists and that the

undisputed facts entitle them to judgment as a matter of law.  Fed. R Civ. P. 56(c); Fed. R. Bank. P. 7056.  While the Court is not entirely persuaded by all of the Franchise Defendants' arguments, it is unequivocally convinced that the Franchise Defendants' second affirmative defense, namely that Plaintiff's Chapter 5 Claims have been discharged by operation of law pursuant to § 1141(d), precludes Plaintiff from going forward with the Complaint.  Because this affirmative defense succeeds on the merits and thus compels the Court to grant the Motion, the Court will not and need not address the Franchise Defendants' other two affirmative defenses raised in the Motion.

Section 1141(d)(1) provides in relevant part as follows:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
> (A) discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not—
> (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;
> (ii) such claim is allowed under section 502 of this title; or
> (iii) the holder of such claim has accepted the plan . . . .

11 U.S.C. § 1141(d)(1)(A).  The parties are in agreement that Plaintiff's Chapter 5 Claims arose before the date of confirmation of the Franchise Defendants' Plan, or, more specifically, on the date the Mendolias filed their Petition.  *See Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 791–92 (Bankr. S.D.N.Y. 2008) (The trustee's ability to bring an avoidance action on behalf of the bankruptcy estate is created when the debtor files its petition.).  Thus, the narrow question to be decided is whether Plaintiff's Chapter 5 Claims enjoy protection or immunity from a chapter 11 discharge of a corporation that is legislatively intended and statutorily designed to be "pervasive."  8-1141 COLLIER ON BANKRUPTCY ¶ 1141.05[1][a] (MB 2012) ("Subject to limited exceptions for certain nondischargeable debts, 'the discharge operates on *all* claims that arose before the date of confirmation.'") (emphasis supplied).

As a whole, the parties' arguments regarding § 1141(d)(1) are brief and touch upon three cases, *WorldCom*, *Shapiro v. Meridian Auto Sys. (In re Lorro, Inc.)*, 391 B.R. 760 (Bankr. E.D. Mich. 2008), and *Nuttall*. For the reasons discussed below, the Court finds the facts of all three cases to be distinguishable from the facts at hand.

The Franchise Defendants argue that Article 8 of their Plan incorporated § 1141(d)(1) and, under the plain language of the statute, once the Franchise Defendants' Plan was confirmed, the Franchise Defendants were discharged from all debts, including administrative expenses, that arose prior to the date of confirmation, except as otherwise provided in the Plan or Confirmation Order. Because the Plan made no provision for the payment of Plaintiff's Chapter 5 Claims, which were unknown to the Franchise Defendants at the time of confirmation, the Franchise Defendants contend that such Claims were discharged by operation of § 1141(d)(1).

In support of their position, the Franchise Defendants point to *Lorro*, wherein the bankruptcy court dismissed the chapter 7 trustee's complaint and post-petition but pre-confirmation avoidance claims against the reorganized debtor, Meridian Automotive Systems, Inc. ("Meridian"), on the basis that, while the claims were unknown to Meridian, the trustee could have raised the claims pre-confirmation so as to ensure that Meridian addressed the claims in its plan. 391 B.R. at 768. Unlike the Franchise Defendants' Plan, Meridian's plan imposed an administrative claims bar date that post-dated confirmation. *Id.* at 763. The bankruptcy court in *Lorro* therefore found that the trustee alternatively could have filed a proof of claim prior to such bar date. *Id.* at 768.

Plaintiff draws attention to the fact that the bankruptcy court in *Lorro* rested its decision on the existence of an administrative claims bar date. By doing so, Plaintiff implies that the existence of an administrative claims bar date is significant and suggests that the Franchise

Defendants' reliance upon *Lorro* is unwarranted and misplaced. The Franchise Defendants, however, suggest that the lack of a separate administrative claims bar date in their Plan is immaterial as the plan confirmation date controlled for the assertion of all claims, including administrative claims. Given that there is no requirement for a separate administrative claims bar date in chapter 11 cases and § 1141(d)(1) is structured to capture administrative expense claims whether or not asserted or allowed, the Court agrees. *See Eagle-Picher Industries v. Caradon Doors & Windows, Inc. (In re Eagle-Picher Indus.)*, 278 B.R. 437, 448 (Bankr. S.D. Ohio 2002), *rev'd on other grounds,* 2003 U.S. Dist. LEXIS 27946 (S.D. Ohio Nov. 14, 2003) (reversing on the basis that the bankruptcy court erred in holding that the claims at issue were not excepted from the discharge contained in the plan because the claims consisted of lawsuit damages that arose in the ordinary course of the debtor's business) ("While bar dates are commonly set in chapter 11 cases," the setting of a bar date is not mandatory.); *see also Deere Credit, Inv. v. Wiley (In re Wiley)*, 2014 Bankr. LEXIS 320, at *9–12 (Bankr. S.D. Ga. Jan. 24, 2014) (Because the Federal Rules of Bankruptcy Procedure do not set specific time limits for allowance of administrative expenses, the meaning of "timeliness" under § 503(a) is left to the bankruptcy courts to consider on a case by case basis.). Where, as here, the Court has not set an administrative claims bar date,

> the time for filing a request for payment of administrative expenses does not continue indefinitely. Rather, confirmation of a plan for reorganization acts as a 'timeliness' bar precluding requests for payment of preconfirmation administrative expenses which could have been addressed preconfirmation. Once a plan is confirmed, the terms of the plan control the 'timeliness' of postconfirmation claims and requests for administrative expense payment.

*Wiley*, 2014 Bankr. LEXIS 320, at *13–14.

Notably, Plaintiff is not claiming that he was denied notice and an opportunity to present the Chapter 5 Claims. *In re St. James Mech., Inc.*, 434 B.R. 54, 57 (Bankr. E.D.N.Y. 2010) (Noting

a well-established exception to the discharge granted under 1141(d)(1)(A) where a creditor did not receive proper notice of a debtor's case in violation of the creditor's due process rights). Rather, Plaintiff is contending that he did not have to do so prior to the expiration of the statute of limitations set by § 546(a), irrespective of the Franchise Defendants' Plan and confirmation process. The statute of limitations, however, by its very nature is procedural and does not confer or enlarge a substantive right. *McClure v. Middletown Hospital Ass'n*, 603 F. Supp. 1365, 1369 (S.D. Ohio 1985) ("[Statutes of limitations] do not confer or extinguish substantive rights, but extinguish the remedy for violation of independent substantive rights.") (citations omitted). Here, the plain language of § 1141(d)(1) and a careful reading of the Franchise Defendants' Plan compels the Court to conclude that Plaintiff's rights to pursue the Chapter 5 Claims in this case were barred by virtue of the Confirmation Order, long before the applicable statute of limitations barred Plaintiff's remedy or right to recover on behalf of the Mendolias' bankruptcy estate.

Notwithstanding the plain language of § 1141(d)(1), Plaintiff argues that the Franchise Defendants' reliance upon the same is flawed because, based upon the Court's finding incorporated in the Confirmation Order that all requirements for confirmation set forth in § 1129 were satisfied, the Franchise Defendants' Plan must have provided for payment of administrative expense claims that arose out of the ordinary course of business in full as required by § 1129(a)(9)(A). In this respect, Plaintiff urges the Court to adopt the position advanced by the bankruptcy court in *Nuttall*, namely that an exception must be read into § 1141(d)(1) to exclude from discharge any administrative expense claims that arose out of the ordinary course of business and for which no request for payment had been made. 188 B.R. at 738. In reaching its conclusion, the bankruptcy court was troubled by the fact that such claims would not be allowed via the claims allowance process set forth in § 503 and therefore would not be governed by § 1129(a)(9)(A), the

latter of which requires that certain administrative expense claims, including those resulting from the ordinary costs of doing business, be paid in full on the effective date of the plan as a condition of confirmation. *Id.* at 737 ("The plain language of § 1141(d) would produce a logical absurdity if not read in *para material* with provisions of the Bankruptcy Code that implicitly recognize that certain allowable administrative expenses that are not specifically contemplated by the plan or by the order confirming the plan survive confirmation and are to be paid in the ordinary course.").

At least one other bankruptcy court has rejected the *Nuttall* decision outright and, in this Court's opinion, for good reason. As a basis for rejecting a party's position that § 1129(a)(9)(A) creates a right to assert an administrative expense claim post-confirmation when that claim is based on pre-confirmation conduct, the bankruptcy court in *Eagle-Picher Industries* stated:

> This court perceives no such logical absurdity. The respective Code sections here under discussion are clearly stated and not inconsistent. Section 1129(a)(9)(A) by its express language deals with administrative expense claims filed pre-confirmation. The injunction in § 1141(d) by its express language bars the assertion post-confirmation of claims based on acts pre-confirmation and makes no exception for administrative expense claims.

278 B.R. at 448. Accordingly, § 1129(a)(9)(A) has no bearing on the question of whether Plaintiff's Chapter 5 Claims survive the Confirmation Order. Here, Plaintiff's Class 5 Claims do not survive the Confirmation Order because, consistent with § 1141(d)(1)(A), the Franchise Defendants' Plan specifically included Administrative Expense Claims within the Article 8 Discharge provision, whether or not such claims were allowed by order of this Court. The Plan, therefore, did not limit the scope of the discharge afforded by § 1141(d)(1)(A).

Lastly, Plaintiff argues that § 1141(d) must be read in conjunction with § 1141(a), such that the discharge provided by the former subsection shall only apply to those parties statutorily

bound by the provisions of a confirmed plan pursuant to the latter subsection. Pursuant to § 1141(a), generally:

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a). Plaintiff contends that the bankruptcy court's decision in *WorldCom* strongly suggests that these chapter 11 provisions are co-dependent.

The Court does not read *WorldCom* in the same manner as Plaintiff and notes that Plaintiff's argument in this respect relies upon non-binding dicta in *WorldCom*. 401 B.R. at 641 n.13. Further, not only is *WorldCom* distinguishable from the facts at hand because the claims at issue in that case arose post-confirmation but prior to the effective date of WorldCom's plan of reorganization, but its holding is limited because the bankruptcy court considered only whether the actions of OneStar Long Distance, Inc. ("OneStar") as a creditor in WorldCom's case could bind the chapter 7 trustee appointed in OneStar's subsequent bankruptcy case pursuant to § 1141(a). *Id.* at 641. The parties in *WorldCom* were directed to assume, for briefing purposes, that WorldCom's plan would be interpreted in the way that WorldCom suggested such that a claim that had arisen after entry of the confirmation order but prior to the effective date would be discharged. *Id.* at 641 n.6. Thus, the bankruptcy court did not address the parties' arguments concerning the applicability of WorldCom's plan provisions to the trustee's claims because, unlike Plaintiff's Chapter 5 Claims, such claims arose post-confirmation. Hence, *WorldCom* is not instructive for purposes of this Motion.

Independently, the Court does not find any support for Plaintiff's argument. Although subsections (a) and (d) of § 1141 are statutorily related, they serve differing purposes. While § 1141(a) controls the relationship between the debtor and all parties holding claims against the debtor by dictating that the terms of the plan and any provisions within the confirmation order control the method, timing, and amount of payments to be made on claims, § 1141(d), subject to certain statutory exceptions inapplicable here, discharges any other right to payment that may have been held by a claimant. *In re Dan River, Inc.*, 2006 Bankr. LEXIS 3240, at *7 (Bankr. N.D. Ga. Sept. 26, 2006) (citations omitted). Thus, absent a creditor's lack of due process, *see, e.g., Gencor Indus. V. CMI Terex Corp. (In re Gencor Indus.)*, 298 B.R. 902, 914 (Bankr. M.D. Fla. 2003) ("On its face, Section 1141(d)(1)(A) appears to provide for an unequivocal discharge; however, the due process rights guaranteed by the Fifth Amendment limit the reach of the section.") (citing 11 U.S.C. § 1141(d)(1)(A)), confirmation of a plan generally "discharges the debtor from *any* debt that arose before the date of such confirmation," 11 U.S.C. § 1141(d) (emphasis added).

## CONCLUSION

To the extent Plaintiff raises arguments not addressed herein, they are neither developed nor clear and are therefore rejected. In this case, Plaintiff had sufficient notice of the Franchise Defendants' Plan confirmation process. In the Court's opinion, the language of § 1141(d)(1)(A) is clear and the Franchise Defendants' Plan and Confirmation Order effectuated a pervasive discharge of all pre-confirmation claims in the Franchise Defendants' cases, including Plaintiff's Chapter 5 Claims. The Chapter 5 Claims do not fall within any of the previously identified statutory exceptions to discharge enumerated in § 1141(d)(6). *See* 11 U.S.C. § 1141(d)(6) (listing two exceptions to discharge that apply to corporate debtors, both of which relate to fraud). In essence, Plaintiff asks the Court to judicially create a separate and unique exception for Chapter 5 Claims, which it simply may not do. *See, e.g., FCC v. NextWave Pers. Commc'n, Inc.*, 537 U.S.

293, 302 (2003) ("Where Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly . . . ."); *Rittenhouse v. Eisen*, 2004 U.S. Dist. LEXIS 28039, at * (W.D. Mich. Feb. 11, 2004), *aff'd*, 404 F.3d 395 (6th Cir. 2005) (Had Congress intended to create an exception to discharge for unpaid attorney fees in a chapter 7 case, presumably it would appear in § 523.). The Franchise Defendants' are, therefore, entitled to summary judgment having now conclusively proven their second affirmative defense.

For the foregoing reasons, it is hereby

ORDERED, that the Motion is granted in favor of the Franchise Defendants on their second affirmative defense and Plaintiff's Complaint is dismissed.

IT IS SO ORDERED.

Dated: February 3, 2015
       Utica, New York

/s/Diane Davis_____
DIANE DAVIS
United States Bankruptcy Judge